# SYLVAN E. HESS v. THEODORE HAMM BREWING COMPANY.[1]

May 14, 1909.

Nos. 15,990—(12).

**Preference by Bankrupt.**

> The evidence warranted the court in finding that an insolvent debtor made payment to a creditor with the intention of creating a preference, and that the creditor knew the debtor was insolvent at the time the payment was made and received.

**Same — Evidence under Bankruptcy Act.**

> Under subdivision b, section 60, of the National Bankruptcy Act, no further evidence is required to show that a creditor had reasonable cause to believe that payment of his claim by an insolvent debtor was made with the intention of creating a preference, when it appears from the circumstances connected with the payment that a preference was a necessary result thereof.

Action in the district court for Ramsey county by the trustee of the estate of Peter Ehrmantraut, bankrupt, to recover $1,114.96, paid by the bankrupt to defendant. The case was tried before Bunn, J., who found in favor of plaintiff. From an order denying defendant's motions to amend the findings and for a new trial, it appealed. Affirmed.

*Thomas McDermott, James D. Denegre* and *W. W. Dunn,* for appellant.

*Louis R. Frankel* and *Sylvan E. Hess,* for respondent.

[1] Reported in 121 N. W. 232.

LEWIS, J.

Peter Ehrmantraut conducted a saloon in the city of St. Paul, and for several years had been a customer of appellant company, and on December 11, 1905, owed appellant $1,314.96. On that day he paid appellant the sum of $1,114.96, and a few days thereafter paid the additional sum of $200. Ehrmantraut filed a voluntary petition in bankruptcy, and this action was brought by the trustee to recover the amount so paid, on the ground that it was a preference and voidable under the provisions of the bankrupt law. The court found that on December 11, 1905, and for some time immediately prior thereto, Ehrmantraut was insolvent, which fact was at that time known to appellant; that on that date he was indebted to creditors of the same class, other than appellant, having claims of considerable amounts, all of which was then known to appellant; that Ehrmantraut paid the amounts above stated to appellant with the intention on his part of giving the company preference over his other creditors; and that such payments had the effect of enabling appellant to obtain a greater percentage of his claim than any of the other creditors of the same class, all of which facts were known to appellant. The argument in support of the assignments of error is presented under two heads: (1) That the evidence does not support the finding that appellant knew, or had reasonable cause to believe, that Ehrmantraut was insolvent; (2) that it conclusively appears from the evidence that the payments by Ehrmantraut to appellant were not made with intent to give him a preference.

1. Ehrmantraut's liabilities amounted to $6,448.40, and his assets to $1,200.85, of which amount $500 was exempt, leaving the sole amount of available assets a stock of liquor of $250 and bar bills of $350. The fee of the homestead was mortgaged for $2,071 and the $1,100 paid appellant was raised by a mortgage on his life estate in the homestead and was given to a rival brewing company. Most of the saloon fixtures belonged to appellant. Of the amount $361 was for the purchase of beer, and was three or four months past due, $100 of the amount was a personal loan of two years' standing, and $200 was the balance due on money advanced for license. Checks had been given to appellant, from time to time, in the amount of $639.90, in payment of its claims, and appellant had held these

checks for more than three months without attempting to collect them. Appellant knew the homestead was mortgaged, and its representative visited the saloon weekly, and could not fail to have been familiar with the amount of business done, and, generally, the amount of stock carried. From all these facts, and other circumstances unnecessary to mention, the court was warranted in finding that Ehrmantraut was hopelessly insolvent, and that such condition was known to appellant.

2. The court found that the payment of $1,314.96 was made by Ehrmantraut with the intention of giving a preference over his other creditors, and the evidence sustains the finding. It is true that Ehrmantraut testified that he raised the money by mortgaging his life estate in the homestead, and paid appellant in order to avoid doing business with that company any longer. It is true that for a short time thereafter he did not transact any business with appellant, and did buy his beer from the company which had advanced him money on the second mortgage; but, appellant having in the meantime purchased the first mortgage, Ehrmantraut again became a customer of appellant in order to avoid a foreclosure of that mortgage. If on December 11, Ehrmantraut was in debt to the extent of more than $6,448, and his available assets did not amount to more than $600, and he had no money on hand with which to pay appellant, and it was necessary to raise it by mortgage, the conclusion is inevitable that in so doing he intended to give appellant a preference, and the court was justified in finding, not only that Ehrmantraut was hopelessly insolvent, but that he made the payment with the intention of creating a preference.

However, appellant argues that it was necessary to go still further; that no preference was shown unless it clearly appears from the evidence, not only that appellant had reasonable cause to believe that Ehrmantraut was insolvent, but also that he had reasonable cause for believing that Ehrmantraut made the payment with the intention of creating a preference. This argument is based on subdivision "b" of section 60 of the federal bankruptcy act of July 1, 1898 (30 St. 562, c. 541 [U. S. Comp. St.. 1901, 3445]), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 St. 799, 800, [U. S. Comp. St. Supp. 1907, 1031]), which reads: "If a bankrupt shall have given

a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. * * * " As authority upon this proposition, appellant cites Hardy v. Gray, 144 Fed. 922, 75 C. C. A. 562. Although there is something said in the opinion in that case which would apparently sustain the position of appellant, it was held that a creditor who indirectly purchased goods from an insolvent debtor and sold the same again at a loss of thirty per cent. had reasonable cause to believe that a preference was made and intended.

We are not prepared to deny that cases may arise where mere insolvency and knowledge thereof by the creditor would be insufficient to constitute a preference, and it might be necessary to go further and expressly prove an intention to make a preference. However that may be, this is not such a case. Appellant not only knew that the bankrupt was insolvent, but also had reasonable cause to believe that the effect of the payment would be to give it a preference. When the intention to prefer is the only reasonable inference from the facts, no other evidence of express intention to prefer is required. This we understand to be the reasoning of the court in Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171; Western Tie & Timber Co. v. Brown, 129 Fed. 728, 64 C. C. A. 256; Id., 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571.

Affirmed.